(No. 36689.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NATHAN DAVIS, Plaintiff in Error.

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 25, 1963.*

DANIEL A. DON, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys

General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a jury trial in the criminal court of Cook County, the defendant, Nathan Davis, was convicted of the murder of one Louis Johnson and sentenced to the penitentiary for a term of 25 years. He prosecutes this writ of error for review contending that he was not proved guilty beyond a reasonable doubt, and that trial errors deprived him of a fair and impartial trial.

Louis Johnson came to his death on the night of January 11, 1961, in a one-room basement apartment where defendant resided. He was stabbed in the back with a kitchen knife having a six-inch blade, the thrust severing his aorta. The exact relationship between the two men does not appear, the trial court having stifled defendant's efforts to establish it, but it is to be gathered from defendant's testimony that Johnson was a frequent visitor, occasionally staying the night and eating in the apartment.

There were no eyewitnesses to the occurrence. Defendant, who admitted the homicide but claimed self-defense, sought to testify that the difficulty between Johnson and himself had started two nights previous when defendant had summoned the police to remove Johnson from the apartment, but the trial court excluded such proof. On the night of the homicide, by defendant's version, Johnson returned to the apartment, threatened to "get even," then struck defendant with his fists and drew a long switchblade knife when defendant took him by the arm and sought to evict him from the room. Defendant said he was knocked down onto a bed, that Johnson jumped on top of him and started to choke him, and that as they were struggling, he, the defendant, reached for a knife under a pillow and stabbed Johnson in the back.

Principal witnesses for the prosecution were James

Moore, a tenant in the room or apartment adjacent to that of defendant, and Rufus Harris, a visitor in Moore's quarters. The door to the latter apartment was open and, around 11:00 P.M., both men saw and spoke to Johnson as he passed through the hall to defendant's room. They could hear the conversation in the next room, which was separated only by a thin partition, and both testified to hearing defendant berate Johnson for having left the apartment door unlocked "when he had gone out," and for Johnson's failure to ever bring any food. The last thing they heard Johnson say was: "Nate, you hurt me. You hurt me. I didn't know you would do me that way.", after which they heard no further noise or conversation. Very shortly after they saw defendant run down the hall and, upon hearing a moan, Moore looked into defendant's room and saw the decedent lying on the floor.

Police officers, who searched the apartment and the deceased within 30 minutes after the homicide, found no weapon other than the knife with which Johnson was killed. Further in regard to the weapon with which Johnson was supposed to have been armed, it was brought out by the prosecution that in an exculpatory statement given at the time of his arrest, defendant had described it as "a small brown-handled knife."

Since the evidence against defendant was completely circumstantial, and because the jury fixed the punishment, it was essential that no proof which might conceivably affect the finding of guilt or innocence or the punishment to be imposed, be excluded if properly admissible. (*People v. Adams*, 25 Ill.2d 568; *Nowacryk v. People*, 139 Ill. 336.) And upon examining this record, we are of the opinion the trial court unduly and improperly circumscribed defendant's proof in certain instances.

Where, in a prosecution for homicide, an accused relies upon self-defense, repeated decisions of this court have held that when evidence has been introduced from

which, if they believe it, the jurors may find that the deceased was the assailant, evidence of his violent disposition and prior threats or misconduct, directed by him toward the defendant, is admissible as tending to show the circumstances confronting the defendant, the extent of his apparent danger and the motive by which he was influenced. (*People* v. *Adams,* 25 Ill.2d 568, 572; *People* v. *Dugas,* 310 Ill. 291.) Specifically, in *People* v. *Willy,* 301 Ill. 307, it was held relevant to such a defense that the defendant had on prior occasions sought police assistance against the violence of the deceased. In the present case, although self-defense was relied upon and there was testimony that Johnson had been the assailant, the trial court scotched all efforts of the defense to show the violent disposition of the deceased and, what is more, ordered stricken and took from consideration of the jury the evidence that the trouble between the two men had its origin two nights previous when defendant had summoned the police to remove Johnson from his apartment. The refusal to admit such evidence prevented defendant from fully developing his defense of self-defense, and constituted prejudicial and reversible error.

Prosecution witnesses testified that defendant had fled from his apartment and had never returned, and the jury was later instructed by the court that the evidence of flight was a proper circumstance to be considered in determining the guilt or innocence of defendant. However, when defendant sought to testify as to what motivated his flight, and to the circumstance that he had voluntarily surrendered himself to the police, he was not permitted to do so. We agree that the refusal of such proof was also prejudicial error. Flight from justice may be indicative of consciousness of guilt and, if unexplained, is a circumstance which may be considered by the jury, in connection with the other evidence in the case, as tending to prove guilt. (*People* v. *Schaffner,* 382 Ill. 266; *People* v. *Gibson,* 385 Ill. 371.)

However, flight is not always dictated by an impulse or purpose to escape the consequences of acts done and, in some instances, is equally or more consistent with some other hypothesis. Accordingly, we have adhered to the view that if there are circumstances which would tend to explain or excuse the flight on grounds consistent with innocence, a defendant is entitled to show them. (*People* v. *Rappaport,* 362 Ill. 462; *People* v. *Bundy,* 295 Ill. 322.) The defendant here was denied that privilege by the court's ruling.

In like manner it is the Illinois and majority view that evidence of voluntary surrender tends to overcome the damaging inferences created by the fact of flight, (see: *People* v. *Martin,* 380 Ill. 328; 25 A.L.R. 886, 906,) the underlying notion being that if there be logic to the presumption that only the guilty would flee, then by force of the same logic it must be presumed that only the innocent would return and surrender themselves. Necessarily, neither the circumstance of flight nor the fact of return and surrender raises, respectively, a legal presumption that an accused is guilty or that he is innocent. But, most certainly, where flight is proved, a defendant is entitled to the benefits of the proof that he returned and voluntarily surrendered, if such is the case. Having permitted the prosecution to introduce evidence of defendant's flight, the force and weight of which evidence was subsequently magnified by the instruction to the jury, we are of the opinion it was error for the trial court not to permit defendant to give evidence of his voluntary return.

Other errors raised are not of a nature that will recur upon a new trial and need not be considered. For the reasons stated the judgment of the criminal court of Cook County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*