People of the State of Illinois, Plaintiff-Appellee, v. Johnnie A. Weller, Defendant-Appellant.

Gen. No. 11,034.

Fourth District.

May 21, 1970.

Michael J. Kehart, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur (Milo J. See, Jr., of counsel), for appellee.

CRAVEN, P. J., delivered the opinion of the court.

This is an appeal from a conviction of murder upon trial by jury. Defendant was found guilty and sentenced to serve forty to sixty years in the penitentiary.

The defendant assigns as error the admission of a confession into evidence on the grounds that it was not voluntary error in the People's opening statement, in that statements of fact were made which were never received into evidence,. and prejudice by the length and detail of the opening statement. Further, the defendant asserts there was error in the denial of his request for a change of counsel. He also asserts failure of the People to establish a corpus delicti, improper instruction of the jury, and improper closing argument of the People to the prejudice of the defendant.

Defendant, Johnnie Weller, and his half brother, Phillip Guthrie, were arrested and indicted for the murder of

Howard Richard Goodin, a Decatur barber. Weller was 17 years old at the time of his arrest and had completed the first semester of his junior year in high school.

Goodin, a Decatur barber, was reported missing, having last been seen by his sister on July 25, 1967, when he was driving his bronze 1966 Chrysler automobile. A week and a half or two weeks thereafter, his sister, her husband and Detective Derr of the Decatur City Police, entered and searched his apartment but found nothing to account for his disappearance.

Suspicion focused on Johnnie Weller and his half brother, Phillip Guthrie. Detective Derr inquired as to these men of a friend of theirs and learned the friend had received a postcard from defendant mailed from Florida. Derr telephoned Florida police searching for Weller and Guthrie. About a week later, in Decatur, Derr arrested Guthrie in a car with Weller's brother. The next day Weller was arrested without a warrant by Decatur City Police.

This arrest, prior to any then known offense and without a warrant, was early on a Saturday morning—around 5:00 a. m. on August 19, 1967. Defendant was questioned by the city police at about 9:00 a. m. on the day of his arrest. He refused to talk to the police. Questioning resumed an hour later and continued for about two hours. Again that evening, at 11:00 p. m., defendant was awakened by a police officer and told to give a statement. He refused. Once more during the night he was awakened by a police officer who, defendant testified, swore at him when defendant again refused to make a statement.

During his confinement defendant's mother visited him four times. Detective Derr talked to her at least three times on the telephone. On Sunday, August 20, 1967, defendant's father and mother visited him. Just prior to this visit they were told by Derr that defendant "could possibly be charged . . . [with] murder"; that if he

made a statement "he could probably be brought up on a lesser charge . . . with a light sentence." The father related this conversation to defendant. Also, Derr on that day told the parents he was not going to "bother" with Guthrie but "was going to concentrate on" defendant.

Mrs. Weller (defendant's mother) visited him on Monday morning. Just prior to her visit Derr told her it would "be easier" on defendant if he would make a statement. Derr told her he could not tell defendant this, but that she could, and that if he would make a statement maybe the prosecutor could make allowances for his age. She told these things to defendant. He told her he was going to talk to Derr. Immediately after his mother's visit defendant told Derr he wanted to talk about the case. Defendant testified that when he told Derr this, Derr told him it would "go easier" on him. The police then drove defendant to a cornfield to which he directed them, and where the body was found. The decomposed remains of the victim, Howard Richard Goodin, were found in the cornfield with hands and feet tied together with a rope. Upon return, a written statement was prepared from an interview with police and an assistant State's Attorney, but defendant refused to sign it. This statement was the confession introduced at the trial.

Defendant filed a motion to suppress his alleged written confession based upon unlawful incarceration, age, prior illness, continual questioning by the police and violation of his constitutional rights. The court heard and denied this motion but found that his incarceration in the county jail constituted unlawful detention.

A motion for determination of competency was heard and denied.

Defendant requested a change of lawyers, which was denied.

Upon trial defendant was found guilty and sentenced.

We have reviewed carefully and at length the record in this case and considered the alleged error. Inasmuch as

this case must be reversed and remanded for a new trial, for reasons hereinafter discussed, it is not necessary nor would any useful purpose be served in discussing at length each asserted error.

The trial court refused to suppress the confession and found it to be voluntary notwithstanding the fact that the defendant had been detained unlawfully. We cannot, under the Illinois authorities, say that the court was in error.

■■ The question of the competency of a confession is for the trial court to determine. Further, the court is not required to be convinced of its voluntary character beyond a reasonable doubt when making its determination of voluntariness or involuntariness. People v. Carter, 39 Ill2d 31, 233 NE2d 393 (1968), and cases there cited. On review, we cannot disturb the finding of the trial court unless we find it contrary to the manifest weight of the evidence. This record does not lend itself to any such finding.

■ In McNabb v. United States, 318 US 332, 87 L Ed 819, 63 S Ct 608 and Mallory v. United States, 354 US 449, 1 L Ed2d 1479, 77 S Ct 1356 (1957), we find holdings to the effect that confessions per se are inadmissible if obtained during illegal detention. In Carter the Illinois Supreme Court specifically recites that the McNabb-Mallory rule has not been adopted in this jurisdiction. (At 39 (233 NE2d at 398).) Thus, under the compulsion of Carter, this court cannot hold that a confession exacted during illegal detention is per se inadmissible.

The prosecuting attorney made a long and detailed opening statement. In the course of that statement he stated, in part, as follows:

> ". . . They kept him [defendant] downstairs while Guthrie was being booked. In waiting for that completion to take Weller upstairs, and not in answer to a question, but voluntarily, Weller said, 'I didn't tell you completely what happened in that statement

425

■■■■■■■■

this afternoon.' Derr asked him what he meant and he stated, 'I did not stay outside that cornfield as stated to you, but I went in the cornfield and I saw both his hands and his feet tied. Guthrie then told me to take the car and drive it away from the spot temporarily and come back momentarily to pick him up.' He stated to Derr that when he came back Guthrie was standing by the side of the road, got into the car, and Weller at that time, according to his own statement, said, 'What is the condition of the barber?' And at that time according to his statement to Derr Guthrie stated that, 'He is dead.'" (Rec p 265.)

The prosecutor further stated:

"Mr. Claude Henry will take the stand, he is a deputy sheriff of Macon County, and state that on the 22nd of August, this is the day after the finding of the body, the statement and transfer of these individuals to Macon County jail, that the investigation had been turned over to the Sheriff because the thing had apparently happened out of town in the country. Deputy Henry will testify that after advising the Defendant Weller of his rights, Defendant Weller made a statement to them, as he had to Derr, that he had gone into that cornfield twice and saw this individual, Howard Richard Goodin, tied hand and foot and hand and feet together. He left the cornfield and, according to his statement to them, when he had left Goodin was still alive and in a sitting position. When he left and took Goodin's car and drove it about, then returned and picked Guthrie up at the edge of the road, he told Deputy Henry that as Goodin [sic, Guthrie] got in the car he asked him, 'What has happened to Goodin?' And at that time he again stated Guthrie said, 'Goodin is dead.' And Weller, according to his own statement

426

and admission, stated, 'How do you know?' And Guthrie in reply is supposed to have said, 'I put him face down in the mud and packed mud around him. . . .' " (Rec pp 265–266.)

The People sought to introduce the first of the above statements through direct examination of Detective Derr. The court sustained defense counsel's objection to this testimony. The People did not call Officer Claude Henry referred to in the opening statement.

■■ It is the purpose of an opening statement to advise the jury concerning the question of facts and it is not, and should not be permitted to become an argument. It should be brief and general rather than detailed, and should be free from material that may tend to improperly prejudice the accused in the eyes of the jury. It, of course, should contain an outline of the facts which the prosecution in good faith expects to prove and which it is competent for him to prove. It is improper, however, for the opening statement to be a long narrative evidentiary recitation by the prosecution. An opening statement of facts purporting to recite evidence not followed by proof of the recited facts is error. See 14A, ILP, Criminal Law, § 574, and cases there cited. The opening statement here offends against this limitation.

We next turn to a consideration of alleged error in the closing argument of the prosecutor to the jury. During closing argument the assistant State's Attorney remarked to the jury that defense counsel "could . . . qualify as an SS Trooper" and likened his conduct of the defense and his tactics and argument to the SS Troops of World War II. He argued that defense counsel's argument was a "sympathy smoke screen" and that his tactics were "to confuse and divert the opposition" while he "accomplished another . . . feat." He stated that their sympathy should be with the victim; that "A human life was taken in one of the most horrible, heinous and re-

pulsive ways of killing that Macon County has seen in some time. . . ." While defense counsel objected to the latter portion of the closing argument, he did not object to the earlier portion.

■ Ordinarily a defendant cannot be heard to complain on appeal about improper argument made without objection. However, where the argument and remarks are so prejudicial as to prevent the defendant from having a fair trial, the reviewing court may consider the error although no specific objection was made in the trial. See: People v. Moore, 9 Ill2d 224, 137 NE2d 246 (1956) ; People v. Fort, 14 Ill2d 491, 153 NE2d 26 (1958).

The People contend that the entire argument was justified as a reply to statements made by defense counsel. This is borne out only partly by our review of the record. We cannot from our examination of the record and the examination of defense counsel's argument in any way find provocation for the statement that the defense counsel "could . . . qualify as an SS Trooper." This was improper. This, further, has to be coupled with the improper, long narrative opening statement and the recitation in that opening statement of matters evidentiary in nature not received into evidence in one instance and not offered into evidence in another.

■ In People v. Dukes, 12 Ill2d 334, 146 NE2d 14 (1957), the court considered an opening statement that injected nonevidentiary matter coupled with improper remarks in the closing argument of the prosecutor and observed (at 342–343, 146 NE2d at 18) :

> ". . . It is improper for the prosecutor to do or say anything in argument the only effect of which will be to inflame the passion or arouse the prejudice of the jury against the defendant without throwing any light on the question for decision. (Citing cases.) . . . ."

The combined improper remarks in the opening statement and closing argument were such as to deprive the defendant of a fair trial.

We turn now to consider two instructions. The People offered a flight instruction which was given over objection. The debate between the parties as to the evidentiary basis for a flight instruction on this record shows the wisdom of the committee charged with drafting Pattern Instructions in Criminal Cases in deciding that no instruction be given on the subject of flight, leaving the question of flight as a proper subject of argument. See IPI, Criminal, 3.03.

IPI, Criminal, 13.21 is an instruction relating to an inference arising from exclusive possession of recently stolen property. Whether such an instruction need be given upon retrial will, of course, be determined by the then evidentiary situation.

■ In People v. Guthrie, 123 Ill App2d 407, — NE2d — (4th Dist 1970), filed this date, the court found it necessary to reverse and remand the conviction of Guthrie, the half brother of the defendant here, and whose trial followed this trial by one week. In Guthrie, the court determined it to have been error to refuse an instruction on involuntary manslaughter. That issue is not tendered by this appeal. Nevertheless, that which is observed in Guthrie with reference to the propriety of such an instruction is applicable to the facts as established by this record.

For the reasons stated, this conviction must be reversed and this cause remanded to the Circuit Court of Macon County for a new trial.

Reversed and remanded for a new trial.

SMITH and TRAPP, JJ., concur.