The People of the State of Illinois, Plaintiff-Appellee, *v.* Robert C. Burch, Jr., Defendant-Appellant.

(No. 73-101;

Second District—September 25, 1974.

Frank Ariano, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Clarence W. Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted in a jury trial of the offenses of rape, conspiracy and aggravated battery. He was sentenced to 4-15 years for rape, 1-5 years for aggravated battery, and 1-5 years for conspiracy, all to run concurrently.

He appeals, contending that he was not proven guilty beyond a reasonable doubt; that various errors in the admission of testimony, in closing argument and in the giving of an *Allen* type instruction prevented a fair trial; and that he may not be convicted of both rape and the conspiracy to commit that rape.

We have recently reviewed the case of an indicted co-defendant, William Casner, who was separately tried. (See *People v. Casner* (1974), 20 Ill.App.3d 107.) The testimony of the prosecutrix and corroborating witnesses at this trial is essentially the same as in the Casner record and as stated in our opinion in *Casner,* and we will not repeat it here. In the trial below this defendant testified that he did not have intercourse with the prosecutrix; that only Casner got into the back seat with her, and that while Casner may have had sexual intercourse based on what the defendant heard in the car, no forcible intercourse even by Casner took place.

■■ From our review of this record we conclude that the evidence is sufficient to sustain the conviction. The prosecutrix's testimony was clear and convincing and was maintained in all substantial aspects under vigorous cross-examination. The forcible rape was corroborated by the testimony of a physician, photographic evidence and the testimony of the baby sitter who saw the victim immediately after the alleged offenses. Defendant's explanation at trial to explain the prosecutrix's injuries was inherently unbelievable and inadequate. On the whole record there was ample evidence to support the jury's finding of guilt beyond a reasonable doubt.

We next consider defendant's argument that trial errors were prejudicial.

Defendant contends first that reversible error was committed because the court on its own motion did not prohibit testimony that co-defendant Casner was convicted in a separate trial for the same offenses. Defendant claims that the prejudice of such testimony was accentuated by the prosecutor's reference to Casner's conviction in closing argument. Defendant argues that a judgment of conviction of a co-defendant in a severed trial is not competent proof on the issue of guilt in his own trial. The State responds that while the statement of the rule is generally true, it does not

apply to a case in which there are accountability and conspiracy issues as here.

While defendant was testifying on his own behalf he was asked by his counsel if he knew where Casner was at the time of defendant's trial, to which the defendant replied:

"A. Yes, I do. He is in the State Penitentiary.

Q. For what?

A. For exactly what he did.

Q. To [the prosecutrix]?

A. Yes."

In closing argument the State's Attorney referred to this questioning and asked whether it did not prove that the complaining witness's story had been proven out if the co-defendant was in jail. The prosecutor also told the jury that they would receive an instruction involving accountability for another's acts and that the jury should find defendant accountable even if some of the jury happened to believe that defendant did not have intercourse with the prosecutrix.

In closing argument defense counsel told the jury that there was no question in his mind but what the complaining witness was seriously harmed,

"But Casner is in the penitentiary right now for that crime * * *.

And it is not the same evidence here as it was in the Casner trial."

The prosecutor objected to this statement on the ground that there was nothing in the evidence to show anything different about the evidence presented in the two cases. The court then instructed the jury to try the case on the evidence they had heard in the court room at defendant's trial.

Part of defendant's trial strategy was to shift the blame on Casner. Defendant testified that Casner hit the prosecutrix and that he told Casner to stop it; that Casner was intoxicated somewhat; that it was only Casner who had intercourse with the prosecutrix; that defendant was in the front seat minding his own business; that it was Casner who threatened defendant when defendant said he was going to the police; and that it was Casner who fled. Faced with strong evidence that the prosecutrix was forcibly raped in the presence of Casner and defendent, shifting the blame to Casner, while not persuasive, was one of the few courses open to defendant's counsel in an attempt to make a defense.

Under the modern cases, and in view of broadened accountability statutes, it is error to admit into evidence the conviction of a co-indictee, co-conspirator, co-defendant, or accomplice who was separately tried or who pleaded guilty. See Annot., 48 A.L.R.2d 1016 (1956). The rule, however, has little application in the particular circumstances of this case. The prosecutor did not introduce into trial the reference to Casner's con-

viction; it was elicited on direct examination of defendant by his own counsel as part of defense counsel's trial strategy, and thereafter argued by defense counsel to the jury to concede that the prosecutrix had been seriously harmed and that Casner was in the penitentiary for having so harmed her. The prosecutor's response therefore was invited, and defendant's contention is without merit. *People v. Burage* (1961), 23 Ill.2d 280, 282-283.

Defendant also claims that it was prejudicial error for the trial judge to call Ivan A. Wemhoff as the court's witness without a specific request by the prosecutor and over defendant's objection; and that the error was compounded by limitation of the right of cross-examination by defense counsel.

■■ Wemhoff was a polygraph expert who was hired by the defendant and listed as a defense witness. He was not called by the defense but was subpoenaed by the State as a rebuttal witness, apparently after he had refused to testify as a witness for the State without a subpoena. In a hearing before the judge, it was disclosed to the court that the witness was expected to prove an impeaching statement made after a polygraph examination by the defendant admitting that defendant had sexual intercourse with the prosecutrix, but claiming that the intercourse was voluntary. Defense counsel moved that the witness be precluded from so testifying on the ground that the *Miranda* warnings had not been given prior to the polygraph examination, and the court denied the motion. Defense counsel made no objection to Wemhoff being called as a court's witness. The court asked a limited number of questions and tendered the witness for cross-examination by both parties. Under these circumstances the case of *People v. Moriarity* (1966), 33 Ill.2d 606, 615, cited by defendant does not support his position, and the failure specifically to object to Wemhoff testifying as a court's witness waived the objection so that it cannot be urged on appeal. *People v. Headrick* (1965), 65 Ill.App.2d 169, 173.

■■ Defendant's contention that his counsel was unduly restricted in cross-examining the court's witness Wemhoff likewise is without merit. Defense counsel sought to explain the circumstances of defendant's impeaching statement by attempting to elicit from Wemhoff that the lie-detector results would show that the defendant had intercourse with the prosecutrix but that it was voluntary. Apparently defense counsel wanted to show that defendant, in order to comport his story with the examiner's opinion, falsely told Wemhoff he had voluntary intercourse with the prosecutrix. Alternatively it appears that it was believed that the polygraph results would show defendant's innocence. The facts sought to be elicited by defense counsel were in direct conflict with defendant's own

testimony that he did not have intercourse with the prosecutrix·and that he did not tell Wemhoff that he did. And the claim of voluntary intercourse could only be established by reference to polygraph results which defense counsel considered favorable on the issue but which were themselves inadmissible. See *People v. Nicholls* (1969), 42 Ill.2d 91, 97; *People v. Zazzetta* (1963), 27 Ill.2d 302.

Nor are we persuaded that defendant was improperly restricted in the examination of Wemhoff when defense counsel sought to inquire whether the prosecutrix had made impeaching statements to the polygraph examiner. As the State has pointed out, no foundation for such impeachment was ever laid during defendant's extensive cross-examination of the prosecutrix. See *People v. Rainford* (1965), 58 Ill.App.2d 312, 317-318.

Defendant makes the further contention, however, that the State in fact brought out the results of the polygraph tests and that this amounted to reversible error. In laying a foundation for the impeaching statement made by defendant to Wemhoff, the prosecutor asked defendant in cross-examination whether defendant had ever told anybody that he had had intercourse with the complaining witness. The defendant replied:

"A   No, I did not.

He told me that this is — this is what he got out of the test, that he did not think that I had forceably [*sic*] had sex with [the prosecutrix]. And I told him that I had been told to come in there and tell the truth and that is exactly what I did and if I was telling the truth and it showed that I was lying there was nothing more I could say.

Q   So he said you didn't pass; right? Then you are saying that he said these things; is that right?

A   He came in and told me that there was certain things that were on the test that were vague."

No objection was made.

On re-direct examination, defense counsel proceeded to have identified three exhibits (which were never allowed into evidence) from John E. Reid & Associates, which counsel had defendant acknowledge were lie-detector-test people. It is at this point that Wemhoff was then called as a rebuttal witness and identified in response to the court's questioning as a polygraph examiner for John E. Reid & Associates. Defense counsel sought to elicit statements from Wemhoff made to defendant concerning lie-detector tests which were given, but objection thereto was sustained. Defense counsel made an offer of proof on what the lie-detector results would show, then called the defendant in surrebuttal.

In the surrebuttal examination of the defendant, defense counsel elicited from defendant the fact that he went to the lie-detector people,

that defendant had taken a prior lie-detector test, and that defendant was told by Wemhoff that he had failed the first test. Defense counsel sought to elicit other information about the tests, including the test results but objections thereto were again sustained. Defense counsel called Wemhoff as his witness and tried unsuccessfully to have the polygraph-test exhibits admitted into evidence. In its objections and closing arguments the State took the position that lie-detector results were not admissible. Defense counsel in his closing arguments stated that he had tried to have the lie-detector statements admitted into evidence but was prevented from doing so by the State's objections.

It thus appears that the State was the initial offender in improperly pursuing and eliciting an answer that a lie-detector test had been taken and that the results were at least vague and possibly negative on some points. The defendant did not object to the State's questions concerning lie-detector results. In fact, defense counsel sought to go extensively and with great persistence into the results of the lie-detector tests as well as the conversations which had surrounded them, and it was the prosecutor's objections which prevented this line of inquiry.

As we have previously noted the results of lie-detector tests may not properly be admitted into evidence. (*People v. Nicholls* (1970), 44 Ill.2d 533, 539; *People v. Zazzetta* (1963), 27 Ill.2d 302.) The mere identification of a witness as a polygraph examiner in and of itself is not error. (*People v. Flowers* (1958), 14 Ill.2d 406, 413.) The fact that the record indicates that a defendant went to a crime laboratory for a lie test and talked to a lie-detector examiner with no presumption as to the results of the test has been held not to be a cause for reversal. (*People v. Sammons* (1959), 17 Ill.2d 316, 320.) It has been held that comments in argument that a witness at first "flunked" a lie-detector test and then told the truth is error, but not reversible error when stricken upon objection. *People v. Martin* (1965), 62 Ill.App.2d 203, 211-212. Compare *People v. Hines* (1967), 87 Ill.App.2d 283, 290.

Unlike the circumstances involved in the cited cases, however, a considerable amount of the polygraph-test results did go to the jury. There is little doubt that the information concerning the polygraph results which did get to the jury may have been prejudicial to the defendant since it indicated at least to some extent that defendant had failed the tests. The prejudice was compounded because defendant's offer of proof, contrary to the impression which may have been left with the jury, showed that the examiner was of the opinion that the defendant may have had only voluntary and not forcible intercourse with the prosecutrix. If we were to rule on the effect upon the jury of the information which it received as to the lie-detector results without reference to who was responsible for

the error, we would not be justified in applying the waiver rule; the issue would fall within the category of plain error under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a).) Although there are cases which hold that failure to object to otherwise inadmissible testimony or evidence of lie tests waives the objection upon review and no plain error is presented (*e.g., Richardson v. Commonwealth* (1969), 355 Mass. 112, 243 N.E.2d 801, 803; *Marable v. State* (1958), 203 Tenn. 440, 313 S.W.2d 451, 458-59; *People v. Baker* (1967), 7 Mich.App. 471, 152 N.W.2d 43, 46-47; *Cook v. State* (Tex.App. 1965), 388 S.W.2d 707, 709); other cases which we deem more persuasive under the facts of this case consider improper references too prejudicial to be waived by failure to object. *State v. Varos* (1961), 69 N.M. 19, 363 P.2d 629, 632; *People v. Schiers* (1971), 19 Cal.App.3d 102, 96 Cal. Rptr. 330, 338; *State v. Mc-Davitt* (1972), 118 N.J. Super. 77, 286 A.2d 86, 87; *State v. Hegel* (1964), 9 Ohio App 2d 12, 222 N.E.2d 666, 668; see also Annot., 95 A.L.R.2d 819, 827-832 (1964).

■■ In view of the whole record of this case, however, we conclude that justice does not require that we apply the plain error rule to reverse the cause. There exists clear and convincing proof of guilt beyond a reasonable doubt and the impact of the improper evidence was substantially due to the strategy of the defense. The most damaging references to the lie-detector results were elicited by defendant's own counsel. The failure to object to the improper evidence of lie-detector-test results was not inadvertent or out of fear of focusing the jury's attention to the matter, but rather was a conscious choice by defense counsel to pursue a definite strategy. In *Pulakis v. State* (Alaska 1970), 476 P.2d 474, 479-480, the court held that defendant waived any objection to the written report of the results of the polygraph examinations since his trial counsel's strategy was to allow and not to exclude the polygraph evidence because counsel thought his client would be benefited more by the jury's knowledge of his consent to be tested than he would be harmed by the results of the tests. The court noted that the plain error rule was inapplicable because it was a known right which was intelligently waived. We think similar considerations apply here. Defense counsel consciously chose the trial strategy of attempting to show as much of the lie-detector results as possible, and to show defendant's willingness to take the tests. Defendant thereby purposefully waived any objection he might have had and cannot now complain of plain error. See also *Rank v. State* (Alaska 1962), 373 P.2d 734, 736; *State v. Chavez* (1969), 80 N.M. 786, 461 P.2d 919, 921; *Sheppard v. Maxwell* (6th Cir. 1965), 346 F.2d 707, 732, *rev'd on other grounds* (1966), 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507.

■■ Defendant next contends that the court erred both in voir dire

examination and in the written instruction to the jury in informing the jury on the requirement of a unanimous verdict.

People's Instruction No. 4 (IPI—Civil No. 1.05 (1971)) read:

> "Any verdict you reach must be unanimous. And in your deliberations you should examine the questions submitted with a proper regard and consideration for the opinions of each other. You should listen to each other's arguments with an open mind, and you should make every reasonable effort to reach a verdict."

The instruction is not objectionable under the standards set forth in *People v. Prim* (1972), 53 Ill.2d 62, 76-7. It does not contain any heed the majority language nor does it inform the jury that if they fail to agree the case must be retried and that it is their duty to reach a verdict, language criticized in *Prim*. The instruction tells the jury that reasonable effort should be made to reach a verdict and the language used cannot fairly be characterized as coercive.

■■ The voir dire examination of one of the jurors did contain erroneous statements, requesting a juror to ask herself such questions as "Is the majority right or am I right?" In light of repeated emphasis by defense counsel including a statement in closing argument that individual belief of guilt is necessary, and in view of People's Instruction No. 4, any possible coercive effect of the voir dire questioning is deemed cured. Moreover, no objection was made to any of the matters here complained of. One who seeks in a reviewing court to avoid the waiver of defects in admonishments to the jury by reason of failure to object has the burden of establishing that the defects are substantial and resulted in denying a fair trial and justice to the defendant. (*People v. Knox* (1969), 116 Ill.App.2d 427, 434.) Defendant cannot sustain such a burden here.

■■ We, therefore, affirm the judgment finding the defendant guilty of rape and aggravated battery. The conviction for conspiracy to commit rape, however, as the parties agree, is improper since one cannot be convicted of the inchoate offense and the principal offense arising from the same conduct. We have disposed of this identical issue in *People v. Casner* (1973), 20 Ill.App.3d 107. The conspiracy conviction is therefore reversed and the sentence entered on that conviction is hereby vacated. This result does not affect the judgment and conviction on the rape charge. See *People v. Miller* (1966), 74 Ill.App.2d 356, 359.

Affirmed in part, reversed in part.

T. MORAN, P. J., and RECHENMACHER, J., concur.