# Illinois Official Reports

## Appellate Court

---

### *People v. Maclin*, 2014 IL App (1st) 110342

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE MACLIN, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-11-0342 |
| Filed<br>Rehearing denied | May 19, 2014<br>June 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not fail to address all of the claims made in defendant's postconviction petition, notwithstanding the fact that the court's dismissal order did not individually mention every argument in the petition; rather, the dismissal denied all of the claims in the petition, and appellate counsel was not ineffective in failing to argue that instructions on the defense of necessity and self-defense to felony murder were improperly rejected, since defendant was unable to establish that he was blameless for purposes of an instruction on necessity, and in Illinois, self-defense cannot be used as a defense to felony murder, and any error would have been harmless in view of the overwhelming evidence of defendant's guilt. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-19506; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Adrienne N. River, all of State Appellate Defender's Office, of Chicago, for appellant. |

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People.

| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

**OPINION**

¶ 1   This appeal arises from a December 17, 2010 order entered by the circuit court of Cook County which dismissed defendant-appellant George Maclin's (Maclin) *pro se* postconviction petition as frivolous and patently without merit. Maclin's postconviction petition followed his conviction for first-degree murder, which was affirmed by this court in *People v. Maclin*, No. 1-07-3460 (2009) (unpublished order under Supreme Court Rule 23). On appeal, Maclin argues that: (1) the trial court improperly dismissed his postconviction petition because the court's order failed to address all of the claims presented in his petition; (2) the trial court erred in dismissing his postconviction petition because the petition stated an arguable basis of a claim that appellate counsel was ineffective for failing to argue that the trial court erred in refusing a jury instruction on the defense of necessity; and (3) the trial court improperly dismissed his postconviction petition because the petition stated an arguable basis of a claim that appellate counsel was ineffective for failing to argue that the trial court erred in refusing a jury instruction on self-defense to felony murder. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3   On July 3, 2002, Ernest McGhee (McGhee) suffered a stab wound to the neck. McGhee passed away as a result of his injury. On that same day, Maclin was arrested for the murder of McGhee. On July 30, 2002, Maclin was charged by indictment with five counts of first-degree murder and one count of armed robbery. The State proceeded to trial on only one count of felony murder predicated on armed robbery (720 ILCS 5/9-1(a)(3), 18-2(a)(1) (West 2002)).

¶ 4   On May 16, 2007, Maclin's trial commenced in the circuit court of Cook County. Emmett Brown (Brown) testified that he had been friends with the victim, McGhee, for six or seven years. At the time of the trial, Brown was employed as a mechanic and also remodeled houses and performed roofing work. Brown testified that around 1 a.m. on July 3, 2002, he

drove to a vacant lot on Adams Street and Western Avenue in Chicago to drink a six-pack of beer. Brown stated that he and his friends would hang out in the vacant lot to drink beer and tell jokes on the weekend and during the week after they finished working. Brown testified that earlier that day, McGhee had been working on the transmission of a blue van that was parked on Adams Street. While sitting in the passenger seat of his vehicle, Brown opened a beer and began talking to his friend, Vearb Smith (Smith). Brown noticed Maclin walking back and forth in the vacant lot and heard Maclin say that "he wasn't going to let nobody else take no money from him" and "whoever do it he going to kill him."

¶ 5    A short time later, Brown saw another vehicle pull up and park behind him. The vehicle was driven by a woman named Helen, and McGhee was in the passenger seat. Brown stated that McGhee exited the vehicle and Maclin immediately approached McGhee and began arguing with him about $5 that McGhee owed to Maclin. Brown testified that Maclin said "you going to pay me my money," and McGhee said "I don't have it." Maclin then told McGhee to go inside a nearby house and get the money from "Mr. Anderson." McGhee went inside the house and then came back out and said that he did not have any money. Brown testified that Maclin began to chase McGhee around a vehicle, and Maclin pulled out a steak knife. Brown stated that Maclin made a stabbing motion with the knife and then said "you going to get my money or I'm going to kill you." McGhee ran across the street, picked up some "rocks or bricks," and began throwing them at Maclin to keep Maclin away from him. Maclin then walked over to the blue van that McGhee had been working on and took McGhee's toolbox from the passenger side of the van. McGhee came over to the van and said "you can't take my toolbox, I need that," to which Maclin responded "you going to give me my money." Brown testified that Maclin put down the toolbox and began chasing McGhee again. McGhee started to run away, but ran out of breath and began walking away from Maclin. Brown stated that McGhee then fell backward and hit his head on the ground. Maclin got on top of McGhee and straddled him, pinning his arms down. Brown testified that Maclin grabbed McGhee's hands and "slowly stuck [McGhee] in the neck." Maclin then got up and walked away from the vacant lot.

¶ 6    Brown testified that after Maclin stabbed McGhee in the neck, he got out of his vehicle to help McGhee. Brown put a towel over the hole in McGhee's neck. Brown stated that he and a woman named Rebecca Beck (Beck) helped McGhee walk over to the blue van. Once the group reached the blue van, McGhee collapsed against a light pole and began gasping for air. Brown then called the paramedics. Brown testified that he went to the police station to give a statement and then returned to his vehicle in the vacant lot. Brown stated that he and Smith were trying to figure out Maclin's last name because they just knew him as "George." Brown and Smith remembered that Maclin had some "medical papers" with him when he was around the area of the vacant lot. Brown and Smith found Maclin's mail on the side of a building near the vacant lot, and Brown called the police. Both Brown and Smith brought Maclin's mail into the police station. Brown testified that on the night of July 3, 2002, he saw Maclin in the area of the vacant lot. Brown called the police, and when the police arrived, Brown directed them in the direction of Western Avenue and Jackson Boulevard. On July 4, 2002, Brown identified Maclin in a physical lineup.

¶ 7    Smith testified that he was friends with McGhee and worked as a mechanic with McGhee. Smith testified that on July 3, 2002, he was asleep on the second floor of a building located at 2337 West Adams Street. Smith heard a commotion and went downstairs to see

what was going on. Smith stated that as he stood on the porch of the building, he saw McGhee lying on the ground with Maclin "standing on top of [McGhee]." Maclin then walked away from McGhee, and McGhee started yelling for help. Beck helped McGhee get up and walk toward Smith. Smith noticed that McGhee was holding his neck and McGhee collapsed at the base of a light pole near the blue van. Smith stated that he remained at the scene of the incident and talked to a police officer. Smith testified that later that morning, he was on the porch of the building talking to Brown about Maclin. Smith and Brown wanted to learn Maclin's last name, and Smith remembered that Maclin had been drinking in the area of the vacant lot with his "V.A. papers." Smith stated that he went to the side of a building where Maclin had been drinking, retrieved Maclin's papers, and gave the papers to Brown. Smith and Brown then called the police and took the papers to the police station. On July 4, 2002, Smith identified Maclin in a physical lineup.

¶ 8      Chicago police officer Todd Stremplewski (Officer Stremplewski) testified that he and his partner were the original officers on the scene of the incident, and they learned that a man had been stabbed with a knife. On July 4, 2002, Officer Stremplewski and his partner responded to a radio call of found property at the vacant lot of 2339 West Adams Street. When Officer Stremplewski arrived at the lot, he spoke with Marilyn Green (Green). Officer Stremplewski testified that Green took him to the area where McGhee was killed and directed him to a garbage can near the area. Officer Stremplewski looked in the garbage can and found a knife. The parties stipulated that the bloodstain on the knife was consistent with the DNA profile of McGhee.

¶ 9      Chicago police detective David March (Detective March) testified that he was assigned as a follow-up detective for McGhee's killing. Detective March testified that the original case report stated that the offender was named "George." Detective March reviewed the available reports and learned that some mail addressed to Maclin had been recovered. At 11:30 p.m. on July 3, 2002, Detective March received a telephone call from Brown, during which Brown informed Detective March that Maclin was present at the scene of McGhee's killing. When Detective March arrived at the scene, Beck directed him to a Chicago Transit Authority bus that was proceeding westbound on Jackson Boulevard. Detective March and his fellow detectives stopped the bus at the corner of Jackson Boulevard and Western Avenue. Detective March testified that he boarded the bus and placed Maclin into custody. At the police station, Detective March advised Maclin of his *Miranda* rights and interviewed him. Maclin denied having any knowledge of, or involvement in, the death of McGhee. Maclin stated that he did not remember where he had been during the incident. Detective March testified that as part of processing, he removed Maclin's shirt to note any scars, marks, or tattoos that can be used for identification. Detective March observed an abrasion on Maclin's left armpit area. Detective March asked Maclin how he was injured, and Maclin replied that the injury occurred two weeks prior and he did not remember how it happened. Detective March testified that he did not notice any blood on Maclin's shirt.

¶ 10      Dr. Mitra Kalelkar (Dr. Kalelkar) testified that she is a forensic pathologist and conducted an autopsy on McGhee. Dr. Kalelkar stated that the cause of McGhee's death was internal bleeding as the result of a stab wound to the left side of his neck. Dr. Kalelkar opined that homicide was the manner of McGhee's death.

¶ 11      Maclin testified that on July 3, 2002, he was sitting in a white van in the area of Adams Street and Western Avenue, smoking crack cocaine with a friend named "Willie." Maclin

stated that he saw McGhee in the area and approached him. Maclin asked McGhee if he had the money that he owed to Maclin. Maclin stated that McGhee looked at him in an angry way, and he felt scared. Maclin again asked McGhee if he had the money, and McGhee became "indignant." McGhee stated that he did not owe Maclin any money and would not give Maclin any money. Maclin testified that he backed away from McGhee because McGhee had several people with him. McGhee came toward Maclin "in a manner like he was getting ready to reach out." Maclin testified that he was scared and reacted by hitting McGhee. Maclin then went back to the white van. Maclin stated that he got in the driver's seat, and he and Willie smoked another bag of crack cocaine. Shortly thereafter, McGhee was standing next to the driver's side of the white van. McGhee asked Maclin to get out of the van and Maclin opened the door. As Maclin was getting out of the van, he felt a sharp sting in the area of his armpit, as if he was "being stuck with something." Maclin looked down and noticed McGhee pulling his hand back. Maclin saw something in McGhee's hand but could not tell what it was. Maclin testified that he fell back into the van and picked up his knife from the seat. Maclin then noticed a toolbox on the floor of the driver's side of the van. Maclin testified that he grabbed the toolbox to use as a shield.

¶ 12      Maclin testified that he stepped outside the white van with the toolbox in his right hand and the knife in his left hand. Maclin backed up toward Western Avenue to get away from McGhee because McGhee had three or four friends with him. As Maclin walked away, he looked and noticed that McGhee was following him. Maclin stopped walking and turned toward McGhee. McGhee also stopped walking and was about 15 or 20 feet away from Maclin. Maclin then began walking again. Maclin testified that he turned to look and noticed that McGhee was now jogging toward him. Maclin stated that he stopped and turned toward McGhee and said "man leave me alone." Maclin began walking again and turned around to see where McGhee's friends were. McGhee's friends were standing back but McGhee was standing right in front of Maclin. Maclin testified that McGhee stepped back and the two men got tangled and fell. Maclin stated that he fell on top of McGhee and noticed that McGhee was holding an object that resembled a screwdriver. Maclin grabbed McGhee's hands and put his knees on the bicep area of McGhee's arms. Maclin testified "next think I know, [Beck] is standing there." Beck told the two men "stop all of this" and to "give me those things." Maclin testified that he handed the knife to Beck. Maclin began to get off of McGhee but noticed that McGhee was still holding an object in his hand. Maclin grabbed McGhee's hand and Beck took the object out of McGhee's hand. Maclin testified that he then got off of McGhee. Maclin walked away and McGhee walked in the other direction. Maclin testified that Beck yelled "somebody is bleeding." At that time, Maclin did not know that McGhee had been stabbed.

¶ 13      Maclin testified that he sat in a park until morning because he lived at Woodside Manor and the doors were locked for the night. Woodside Manor is a health care and assisted living facility located in Chicago Heights, Illinois. Maclin testified that at 6:30 a.m. on July 3, 2002, Maclin took the bus to Chicago Heights and went to St. James Hospital to have his wound treated. Maclin stated that his wound was flushed and bandaged, and he was given prescriptions for antibiotics and pain. Maclin was then released from the hospital and went home to Woodside Manor. After Maclin arrived home, he went to see "Nurse Mary," a nurse at Woodside Manor that fills prescriptions for patients. Maclin stated that Nurse Mary looked at his wound and gave him medication. Later in the day on July 3, 2002, Maclin went back to

the area of the vacant lot in an attempt to purchase drugs. Maclin stated that while he was on a bus on Jackson Boulevard, a police officer removed him from the bus.

¶ 14    After Maclin's testimony concluded, defense counsel filed a motion seeking to admit evidence of McGhee's propensity for violence pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984). The trial court denied defense counsel's motion.

¶ 15    Nurse Mary Willis (Nurse Willis) testified that on July 3, 2002, she worked as a licensed practical nurse (LPN) at Woodside Manor in Chicago Heights. Nurse Willis stated that on that day, Maclin approached her and said that he had been stabbed. Nurse Willis observed a puncture wound on Maclin's left chest. Nurse Willis testified that Maclin's wound looked "fresh," but that it was not bleeding. Nurse Willis then faxed Maclin's prescriptions to a pharmacy outside of Woodside Manor. Nurse Willis testified that she asked Maclin how he was injured, and Maclin replied "I woke up in the woods, and I don't know what woods." Maclin did not tell Nurse Willis that he was stabbed by McGhee.

¶ 16    After closing arguments concluded, the jury was instructed on the offenses of first-degree murder and armed robbery. The jury was instructed to return a verdict of guilty only if it found that the state proved all elements of both offenses beyond a reasonable doubt. The trial court refused to instruct the jury on the defenses of necessity and self-defense. The jury returned a verdict finding Maclin guilty of first-degree murder. On June 19, 2007, Maclin filed a motion for new trial. The trial court denied Maclin's motion. On October 29, 2007, the trial court sentenced Maclin to a mandatory term of life imprisonment because Maclin had been previously convicted of first-degree murder.

¶ 17    On direct appeal, Maclin argued that: (1) he was not proven guilty of felony murder beyond a reasonable doubt; and (2) the trial court erred in refusing to admit evidence of McGhee's violent history pursuant to *Lynch*. This court rejected Maclin's arguments and held that based on the evidence at trial, the jury could have reasonably inferred that Maclin took the toolbox through a threat of force before stabbing McGhee; and that the trial court did not err in excluding evidence of McGhee's violent history because the evidence was both legally and factually irrelevant to the case. Therefore, this court affirmed the judgment of the trial court.

¶ 18    On September 21, 2010, Maclin filed a *pro se* postconviction petition. In his petition, Maclin presented the following arguments: trial counsel was ineffective for failing to preserve a 911 tape recording; the trial court's refusal to instruct the jury on self-defense created a mandatory presumption that Maclin committed armed robbery; appellate counsel was ineffective for failing to argue that trial counsel was ineffective regarding the 911 tape recording; appellate counsel was ineffective for failing to argue that the preclusion of the self-defense instruction created a mandatory presumption; and appellate counsel was ineffective for failing to argue that the trial court erred in rejecting instructions on self-defense and necessity. On December 17, 2010, the trial court entered a written order which dismissed Maclin's petition as frivolous and patently without merit.

¶ 19                                    ANALYSIS

¶ 20    Before addressing the merits of Maclin's appeal, we must determine whether we have jurisdiction to consider his appeal. We note that neither party presents an argument on the jurisdiction issue. However, we are required to examine our jurisdiction *sua sponte*, and we must dismiss the appeal if we lack jurisdiction. *People v. Trimarco*, 364 Ill. App. 3d 549, 550

(2006). Illinois Supreme Court Rule 651 (eff. Feb. 6, 2013) governs appeals in postconviction proceedings and states that the procedure for postconviction appeals shall be in accordance with the rules governing criminal appeals. Illinois Supreme Court Rule 606 (eff. Feb. 6, 2013) states that appeals in criminal cases must be filed with the clerk of the trial court *within 30 days* after the entry of the final judgment.

¶ 21    In this case, the trial court dismissed Maclin's petition on December 17, 2010. Upon granting Maclin's motion to supplement the record and petition for rehearing, this court has learned that Maclin's notice of appeal was mailed on January 13, 2011. The envelope in the supplemental record was properly addressed to the clerk of the circuit court. Attached to the notice of appeal was a certificate of service, which was notarized by a notary public. However, the notice of appeal was not received and filed in the circuit court until January 20, 2011, which was more than 30 days after Maclin's petition was dismissed and past the due date for filing an appeal. See Ill. S. Ct. Rs. 606, 651 (eff. Feb. 6, 2013). We note that this court has applied the mailbox rule to the filing of postconviction petitions. See *People v. Maiden*, 2013 IL App (2d) 120016; *People v. Hansen*, 2011 IL App (2d) 081226; *People v. Lugo*, 391 Ill. App. 3d 995 (2009). The mailbox rule states that when a notice of appeal is received after the due date, the time of mailing shall be deemed the time of filing. *Maiden*, 2013 IL App (2d) 120016, ¶ 9. In this case, the deadline for Maclin's appeal to be timely filed with the clerk was January 18, 2011.[1] Under the mailbox rule, Maclin's notice of appeal is considered to have been filed on January 13, 2011, the date on which the notice of appeal was mailed to the clerk of the circuit court. Thus, Maclin timely filed his notice of appeal and this court has jurisdiction to consider his arguments on appeal.

¶ 22    Turning to the merits of the appeal, we determine the following issues: (1) whether the trial court improperly dismissed Maclin's postconviction petition because the court's order failed to address all of the claims presented in his petition; (2) whether the trial court erred in dismissing Maclin's postconviction petition because the petition stated an arguable basis of a claim that appellate counsel was ineffective for failing to argue that the trial court erred in refusing a jury instruction on the defense of necessity; and (3) whether the trial court improperly dismissed Maclin's postconviction petition because the petition stated an arguable basis of a claim that appellate counsel was ineffective for failing to argue that the trial court erred in refusing a jury instruction on self-defense to felony murder.

¶ 23    We first determine whether the trial court improperly dismissed Maclin's postconviction petition because the court's order failed to address all of the claims presented in his petition.

¶ 24    Maclin argues that the trial court failed to comply with its duty to examine his postconviction petition pursuant to section 122-2.1(a) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2.1(a) (West 2010)), because in its written order the trial court addressed fewer than all the claims presented in his petition. Specifically, Maclin argues that the trial court failed to address his arguments that the lack of a self-defense instruction resulted in a presumption that Maclin was guilty of armed robbery; and that appellate counsel was ineffective for not arguing that the trial court erred in rejecting an instruction on the defense of necessity. Maclin contends that when a trial court summarily dismisses a postconviction petition without complying with its statutory duty to examine the petition, the

---

[1]The deadline extended to January 18, 2011 because January 17, 2011 was a holiday. See 5 ILCS 70/1.11 (West 2010); 5 ILCS 490/65 (West 2010).

dismissal order is void. Thus, Maclin argues that the trial court's written order that summarily dismissed his postconviction petition is void.

¶ 25    In response, the State argues that the trial court properly dismissed Maclin's *pro se* postconviction petition because it complied with the guidelines of section 122-2.1(a) of the Act. Specifically, the State argues that the trial court dismissed Maclin's petition within 90 days, and it examined Maclin's petition in its entirety. The State contends that in Illinois, it has been repeatedly held that there is no such thing as "partial summary dismissal" and that trial courts may not dispose of a petition at the first stage unless all the claims are frivolous and patently without merit. The State claims that it was not necessary for the trial court to specifically mention each of Maclin's claims when it dismissed his petition. The State argues that the trial court impliedly denied the claims in Maclin's petition by entering an order which summarily dismissed Maclin's entire petition. Further, the State argues that Maclin's petition was supported by a self-verified affidavit under section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2010)), as opposed to a notarized affidavit as required by section 122-1(b) of the Act (725 ILCS 5/122-1(b) (West 2010)). Because Maclin failed to comply with the requirements of section 122-1(b), the State argues that the trial court properly dismissed Maclin's postconviction petition.

¶ 26    The Act provides a method through which a defendant may challenge his conviction or sentence based on violations of his federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). "The scope of the postconviction proceeding is limited to constitutional matters that have not been, and could not have been, previously adjudicated." *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). When the death penalty is not involved, postconviction proceedings consist of as many as three stages. *Pendleton*, 223 Ill. 2d at 471-72. At the first stage, the trial court must review a petition within 90 days of when the petition was filed, and the court may summarily dismiss the petition if it finds that the petition is frivolous and patently without merit. *Id.* at 472. In order to survive dismissal at the first stage, a petition only has to present the "gist" of a constitutional claim. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). We review the trial court's dismissal of a postconviction petition at the first stage of proceedings under the *de novo* standard of review. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 27    We do not agree with Maclin's argument that the trial court erred in failing to address all the claims in his postconviction petition. As the State points out, the trial court is not permitted to partially dismiss postconviction petitions because the dismissal of a petition under the Act is a final judgment. *People v. Rivera*, 198 Ill. 2d 364, 371 (2001). Furthermore, the supreme court has held that when a petition is summarily dismissed, the trial court impliedly denies all requests in the defendant's prayer for relief. *People v. Harris*, 224 Ill. 2d 115, 139 (2007). In this case, the trial court composed a lengthy and thorough written order and concluded that the issues presented in Maclin's petition were frivolous and patently without merit. The trial court did not limit its judgment to any specific claims and it did not attempt to enter a partial dismissal. Contrary to Maclin's belief, the court is not required to provide a written response to each and every specific claim that is presented within a postconviction petition. Thus, the trial court's dismissal of Maclin's petition denied all the claims within the petition.

¶ 28    Moreover, contrary to Maclin's argument, the written order suggests that the trial court did consider *all* of the claims that Maclin presented. Maclin's postconviction petition consists of three headings that present the following claims:

"CLAIM I: Petitioner Was Deprived Of Effective Assistance Of Trial Counsel And Was Prejudiced As a Result.

* * *

CLAIM II: During Petitioner's Jury Trial The Jury Instructions Given To The Jury On Felony Murder Is Unconstitutional, Because It Precluded Instruction On Self-Defense As a Defense, While Establishing A Mandatory Presumption Of The Act of Armed Robbery Burden Shifting To The Defendant.

* * *

CLAIM III: Petitioner Was Denied Effective Assistance Of Appellate Counsel On Direct Appeal And Was Prejudiced As a Result."

In its written order, the trial court stated that Maclin's petition alleged that "(1) the trial court erred in refusing to instruct the jury regarding self-defense; (2) trial counsel was ineffective for failing to subpoena the 911 tapes within 30 days of his arrest; and (3) appellate counsel was ineffective for they failed to raise the ineffectiveness of trial counsel on appeal." Although the trial court did not use the exact language incorporated into Maclin's petition, it summarized and discussed Maclin's three main claims. The claims that Maclin argues the trial court ignored were underlying claims imbedded in and discussed within his main arguments. Just because the trial court's order did not comment on every subargument within Maclin's petition does not mean that the court failed to consider all of Maclin's claims. We believe that Maclin's arguments on this point are meritless. Therefore, we hold that the trial court did not err by failing to address, individually, every argument in Maclin's postconviction petition.

¶ 29    We next determine whether the trial court erred in dismissing Maclin's postconviction petition where Maclin claims that the petition stated an arguable basis of a claim that appellate counsel was ineffective for failing to argue that the trial court erred in refusing a jury instruction on the defense of necessity.

¶ 30    Maclin argues that appellate counsel was ineffective for failing to argue that the trial court erred in refusing the jury instruction on the defense of necessity. He claims that there was evidence that McGhee stabbed him first and that he took the toolbox to use as a shield against McGhee. Thus, Maclin contends that the evidence could support a jury finding that he committed armed robbery out of necessity. Maclin asserts that if the jury found that he had a defense to armed robbery, it would not have found him guilty of felony murder based on armed robbery. Maclin claims that appellate counsel erred by not raising the trial court's refusal to instruct the jury on a necessity defense to armed robbery, because there is a reasonable probability that this court would have reversed Maclin's conviction based on the necessity defense issue. Therefore, Maclin argues that appellate counsel was ineffective.

¶ 31    In response, the State argues that appellate counsel was not ineffective because the trial court properly refused the jury instruction on the necessity defense. The State contends that in Illinois, an instruction on the necessity defense requires that the accused be wholly without blame in creating or developing the situation at issue. The State asserts that, even accepting Maclin's testimony as credible, he is still unable to establish that he was wholly without blame. The State claims that even if Maclin's testimony is true, it shows that he had no right

to be inside the van in which he was smoking crack cocaine. The State contends that Maclin's unlawful entry into the van exacerbated the situation because that was where McGhee's toolbox was located. Therefore, regardless of Maclin's credibility, his behavior aggravated the situation. Accordingly, the State argues that he was not free from blame in creating the situation which gave rise to the stabbing. Thus, the State argues that appellate counsel was not ineffective because it is highly unlikely that this court would have reversed Maclin's conviction based on the necessity defense.

¶ 32    A defendant's claim of ineffective assistance of counsel is analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Manning*, 241 Ill. 2d 319, 326 (2011). The *Strickland* standard requires a defendant to show that counsel's performance was objectively unreasonable and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. Similarly, the *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *People v. Easley*, 192 Ill. 2d 307, 328 (2000). A defendant who argues that appellate counsel was ineffective for failing to argue an issue must show that the failure was objectively unreasonable, and that the defendant was prejudiced by the decision. *Id*. at 328-29. Appellate counsel is not required to brief every conceivable issue on appeal, and counsel is not incompetent for choosing not to raise meritless issues. *Id*. at 329.

¶ 33    "A criminal defendant is entitled to have a jury instruction on any legally recognized affirmative defense theory on which he has presented 'some evidence.' " *People v. Roberts*, 136 Ill. App. 3d 863, 865 (1985). Section 7-13 of the Criminal Code of 1961 (Code) (720 ILCS 5/7-13 (West 2010)) defines the defense of necessity as follows:

> "Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2010).

Illinois courts have repeatedly held that a necessity instruction is properly denied when the defendant was not without blame in causing or developing the situation at issue. See *People v. Brown*, 341 Ill. App. 3d 774, 782 (2003); *Roberts*, 136 Ill. App. 3d at 865; *People v. Perez*, 97 Ill. App. 3d 278, 280-81 (1981).

¶ 34    We agree with the State's argument that the trial court properly denied the instruction on the necessity defense. Even if Maclin's testimony is credible, he shared blame for creating the situation in which he took McGhee's toolbox. At trial, Maclin testified that he approached McGhee and repeatedly asked about money that McGhee owed him. Also, Maclin testified that McGhee reached out toward Maclin, and Maclin reacted by hitting McGhee. According to Maclin's testimony, this was the first physical contact between McGhee and Maclin during the altercation. Although Maclin testified that he was scared at that point, there were several alternatives to hitting McGhee. Maclin could have simply run away or walked away from McGhee. Instead, Maclin chose to hit McGhee. It can certainly be assumed from Maclin's own testimony that hitting McGhee aggravated the situation. Moreover, Brown testified that before McGhee arrived at the vacant lot, Maclin was walking around saying that he would kill anyone that tried to take money from him. All of this evidence clearly establishes that Maclin played a role in causing or exacerbating the situation in which he ended up taking McGhee's toolbox. Therefore, the trial court did not err in

refusing to instruct the jury on the defense of necessity. Accordingly, we hold that appellate counsel was not ineffective for failing to raise the necessity defense issue on appeal.

¶ 35    We next determine whether the trial court improperly dismissed Maclin's postconviction petition because the petition stated an arguable basis of a claim that appellate counsel was ineffective for failing to argue that the trial court erred in refusing a jury instruction on self-defense to felony murder.

¶ 36    Maclin argues that appellate counsel was ineffective for failing to argue that the trial court erred in refusing the self-defense instruction, because there was evidence that stabbing McGhee was a justifiable act of self-defense. Specifically, Maclin contends that his testimony at trial shows that McGhee stabbed Maclin first and tried to stab Maclin again before Maclin retaliated. Thus, Maclin claims that the jury could have found that Maclin stabbed McGhee in self-defense. Maclin acknowledges that generally, self-defense cannot be used as a defense to felony murder. However, Maclin points out that there is a narrow exception to this rule where the provocation or belief in the need for self-defense occurs before the defendant formed the intent to commit the underlying felony. Maclin asserts that the instant case presents a unique set of facts that fall under the exception to the rule. Therefore, Maclin argues that if appellate counsel had raised the self-defense instruction issue on appeal, there is a reasonable probability that this court would have reversed Maclin's conviction.

¶ 37    In response, the State argues that appellate counsel was not ineffective because counsel's performance was not unreasonable, and Maclin was not prejudiced by counsel's performance. The State argues that in Illinois, self-defense cannot be used as a defense to felony murder. Thus, the State contends that the trial court did not err in refusing the self-defense instruction. Accordingly, the State asserts that appellate counsel could not have been deficient for choosing not to raise the issue on appeal. Further, the State argues that even if the trial court did err in refusing to instruct the jury on self-defense, the error was harmless because the evidence of Maclin's guilt was overwhelming. Therefore, the State contends that Maclin could not have been prejudiced by appellate counsel's choice not to raise the self-defense instruction issue.

¶ 38    Section 9-1(a)(3) of the Act defines the offense of felony murder as follows:

> "(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> * * *
>
> (3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9-1(a)(3) (West 2010).

Generally, a felony murder defendant is not entitled to a jury instruction regarding self-defense. *People v. Walker*, 392 Ill. App. 3d 277, 287 (2009). However, there is a narrow exception to the general rule. *Id.* "Provocation and belief in the need for self-defense can be partial defenses to felony murder, if the provocation or the belief in the need for self-defense occurred before defendant formed the intent to commit the underlying felony." *Id.* at 287-88.

¶ 39    In this case, Maclin argues that there was enough evidence at trial to support a self-defense jury instruction. We disagree. The evidence of Maclin's guilt at trial was overwhelming. Specifically, Brown's testimony established that before the altercation with McGhee, Maclin was walking around the vacant lot saying that he was going to kill someone if they took money from him. The record establishes that there is support for the jury's

finding that Maclin initiated the altercation with McGhee and took the toolbox after McGhee refused to give him money and that Maclin chased McGhee and stabbed him in the neck. Detective March testified that Maclin stated that he had no knowledge or memory of the incident with McGhee. Additionally, both Detective March and Nurse Willis testified that Maclin told them that he was not sure how he received the abrasion on his chest. Maclin told Detective March that the injury happened weeks before the incident with McGhee. Based on the entire record, we find that Maclin is not able to satisfy the standard of showing "some evidence" to support a self-defense jury instruction. Accordingly, the trial court did not err in refusing to instruct the jury on self-defense.

¶ 40    Moreover, we note that even if the trial court had erred in refusing to instruct the jury on self-defense, the error would have been harmless because the evidence of Maclin's guilt was overwhelming and the outcome of the trial would not have been affected. "An error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed." *People v. Pomykala*, 203 Ill. 2d 198, 210 (2003). Thus, appellate counsel's representation was not unreasonable, and Maclin was not prejudiced by counsel's representation. Accordingly, we hold that appellate counsel was not ineffective for choosing not to raise the self-defense instruction issue on appeal. Likewise, we hold that the trial court properly dismissed Maclin's postconviction petition as frivolous and patently without merit.

¶ 41    We note that the State also argues that Maclin's postconviction petition was properly dismissed because it was supported by self-verification under section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2010)), instead of a notarized affidavit as required by section 122-1(b) of the Act. However, because we hold that the trial court properly dismissed Maclin's postconviction petition as frivolous and patently without merit, we need not address this argument.

¶ 42    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 43    Affirmed.